**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**July 1, 2026**

# In the Court of Appeals of Georgia

A26A0762. THE STATE v. HOUSLEY.

BROWN, Chief Judge.

This Court granted the State's application for interlocutory appeal from the trial court's order disqualifying the Macon Judicial Circuit District Attorney's Office from the prosecution of criminal charges against Harold Housley. For the following reasons, we reverse.[1]

In reviewing a trial court's ruling on a motion to disqualify, "we must examine the particular facts and circumstances of each case while keeping some general principles in mind." *Roman v. State*, 373 Ga. App. 863, 872(1) (910 SE2d 609) (2024) (*"Roman I"*). This Court reviews "the trial court's ruling on a motion to disqualify

---

[1] We deny Housley's motion to remand for additional findings of fact.

a prosecutor for abuse of discretion. Such an exercise of discretion is based on the trial court's findings of fact which we must sustain if there is any evidence to support them." *Neuman v. State*, 311 Ga. 83, 88(3) (856 SE2d 289) (2021) (citation and punctuation omitted). However, "because opposing counsel may employ a motion to disqualify to delay the proceedings or disrupt a case, we view disqualification as an extraordinary remedy that should be granted sparingly." *Cohen v. Rogers*, 338 Ga. App. 156, 166(3) (789 SE2d 352) (2016) (punctuation omitted).

So viewed, the record shows that on April 9, 2025, a Bibb County grand jury indicted Housley for one count each of rape and child molestation. Assistant District Attorney Kayla Callaway was assigned to prosecute Housley's case. On April 29, 2025, Assistant Public Defender Allyson Yates filed an entry of appearance and served the same upon the District Attorney's office. Thereafter, Callaway and Yates communicated with one another about Housley's case.

The case against Housley involved the alleged molestation and rape of a juvenile victim, as a result of which the victim became pregnant. After the baby was born, law enforcement with the Bibb County Sheriff's Office took DNA samples from the

victim, her child, and Housley. The three DNA samples were then sent to the Georgia Bureau of Investigation Crime Lab for testing and comparison.

On May 16, 2025, a multi-disciplinary sexual assault and crimes against children team ("MDT") assembled to discuss the cases pending before the district attorney's office, including the case against Housley. Assistant District Attorney Breanna Foster[2] ("ADA Foster") and Nicholas McCane, an investigator employed by the Macon Judicial Circuit District Attorney's Office, were present. Trinicholas Carswell,[3] an investigator employed by the Georgia Attorney General's Office, was present as well. At the meeting, Investigator Carswell announced that DNA results had been returned in Housley's case and the results indicated that he had fathered the child with the victim. Investigator Carswell advised ADA Foster and Investigator McCane that she intended to go to the Bibb County Law Enforcement Center to deliver the DNA test results to Housley in person. ADA Foster and Investigator McCane elected to accompany Investigator Carswell to meet with Housley.

---

[2] ADA Foster was not assigned to Housley's case.

[3] At the beginning of this case, Investigator Carswell worked for Bibb County Sheriff's Office, but then joined the Georgia Attorney General's office as an investigator in April 2025.

Housley was brought to a courtroom inside the law enforcement center. Investigator Carswell, Investigator McCane, and ADA Foster then joined him. Investigator Carswell then told Housley the results of the DNA test and asked him if he wanted to talk about it. Housley responded with his denial of sexual contact and requested additional DNA testing. Investigator Carswell discussed the possibility of additional DNA testing with Housley and eventually gave him a copy of the DNA report. Although ADA Foster and Investigator McCane did not participate in the conversation with Housley, they were present during the entirety of this conversation and did not intervene. Housley was not advised of his *Miranda*[4] rights at any time during this interaction and neither Housley's attorney nor the prosecutor assigned to Housley's case were present at the interaction. None of the district attorney's employees checked to determine whether Housley was represented by counsel prior to this discussion.

Housley subsequently filed a motion to disqualify the Macon Judicial Circuit District Attorney's Office. After a hearing, the trial court granted the motion, concluding that "[t]he actions of ADA Foster, Investigator McCane[,] and

[4] See *Miranda v. Arizona*, 384 US 436, 452–54(1) (86 SCt 1602, 16 LE2d 694) (1966).

Investigator Carswell on May 16, 2026, violated Mr. Housley's rights under the Fifth and Sixth Amendments to the United States Constitution as well as Georgia's analogous provisions" and created a "significant appearance of impropriety." It further held that ADA Foster's failure to check whether Housley was represented by counsel violated the Georgia Rules of Professional Conduct 3.8(c)[5] and 4.2(a).[6] The trial court noted that although District Attorney Anita Howard did not "engage[ ] in any personal impropriety," she was nonetheless "responsible for ADA Foster's conduct under [Georgia Rules of Professional Conduct] Rule 5.1."[7] The trial court

---

[5] Rule 3.8(c) provides that "[t]he prosecutor in a criminal case shall ... comply with Rule 4.2." Comment 1 of Rule 3.8 provides that because prosecutors have the "responsibility of a minister of justice," they also have "specific obligations to see that the defendant is accorded procedural justice."

[6] Rule 4.2(a) provides that "[a] lawyer who is representing a client ... shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter" unless the lawyer has consent from the other lawyer or is otherwise authorized to do so by the court.

[7] Rule 5.1(b) provides that "[a] lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Georgia Rules of Professional Conduct." Rule 5.1(c) provides that a supervising lawyer is responsible for another lawyer's behavior only if the supervising lawyer "orders, or with knowledge of the specific conduct, ratifies the conduct involved; or ... knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." Rule 5.1(c)(1),(2).

then admonished District Attorney Howard for failing to properly train her staff and held that "[t]he proper training of the prosecution's staff and creation of a workplace where the actions described above are ... excused falls squarely on the shoulders of District Attorney Howard." The trial court rejected the State's proposed remedy of excluding ADA Foster and Investigator McCane from Housley's prosecution as insufficient because they "were not involved with the case and had no role in its prosecution."[8]

Finally, the trial court concluded that the actions of ADA Foster and Investigator McCane "create[d] a significant appearance of impropriety," the "taint" of which "extend[ed] to the entire District Attorney's Office, including the elected District Attorney [Howard]." The trial court then granted Housley's motion to disqualify the Macon Judicial Circuit District Attorney's Office in its entirety. The trial court certified its decision for immediate review, and this Court granted the State's application for interlocutory appeal.

---

[8] The trial court's order does not address the State's other proffered remedy—that any information obtained from the May 16, 2025 dissemination of the DNA results or the encounter would not be used at any trial of the case or elsewhere.

Georgia case law is clear that a prosecuting attorney can be disqualified if there is a conflict of interest or if the prosecutor has engaged in forensic misconduct. *Williams v. State*, 258 Ga. 305, 314(2)(B) (369 SE2d 232) (1988). A conflict of interest has been held to arise "where the prosecutor previously has represented the defendant with respect to the offense charged or has consulted with the defendant in a professional capacity with regard thereto; such conflict also has been held to arise where the prosecutor has acquired a personal interest or stake in the defendant's conviction." Id. An example of forensic misconduct is when a prosecutor makes public statements expressing belief in the defendant's guilt which are calculated "to prejudice the defendant in the minds of the jurors." Id. at 315(2)(B).

Georgia courts have also found that "a significant appearance of impropriety caused by the conduct of a public prosecutor" may be grounds for the disqualification of a district attorney when the interest of the public at large "outweigh[s] the client's interest in choice of counsel." *Roman I*, 373 Ga. App. at 872–73(1) (although "an appearance of impropriety generally is not enough to support disqualification," the facts of that case constituted "the rare case in which disqualification is mandated and no other remedy will suffice to restore public confidence in the integrity of the

proceedings").[9] See also *Battle v. State*, 301 Ga. 694, 698(3) (804 SE2d 46) (2017) (stating that the appearance of impropriety may be grounds for disqualification of a prosecutor).

Here, the State does not challenge the trial court's finding that ADA Foster and Investigator McCane violated Housley's Fifth and Sixth Amendment rights or that they violated the Georgia Rules of Professional Conduct. Similarly, the State does not challenge the trial court's finding that such conduct created an appearance of impropriety. Instead, the State argues that the trial court abused its discretion by disqualifying District Attorney Howard and the *entire* Macon Judicial Circuit District Attorney's Office as its remedy for these violations. Accordingly, as in *Roman I*, the question of whether the trial court erred by "finding … the existence of an appearance

---

[9] The Supreme Court of Georgia denied the State's petition for certioari in *Roman I*. See *State v. Roman*, 322 Ga. 571 (920 SE2d 658) (2025) ("*Roman II*"). In his concurrence to *Roman II*, Justice Pinson questioned whether a prosecutor may be disqualified "solely upon an appearance of impropriety and absent a finding of an actual conflict of interest or forensic misconduct," but deferred ruling upon such question until presented with an "appropriate case." *Roman II*, 322 Ga. at 573(1). In her dissent, Justice McMillian acknowledged that "some states with similar rules of professional conduct have concluded that the appearance of impropriety alone can be the basis for disqualification of an attorney while other states have reached the opposite conclusion and still other states have adopted a standard somewhere in between." Id. at 584 n.9.

of impropriety is *not* before this Court." *Roman I*, 373 Ga. App. at 864 (emphasis in original). Instead, "our consideration of the appearance of impropriety is limited to the remedy fashioned by the trial court." Id. at 871(1).

(a) We first address whether the trial court erred in disqualifying the Macon Judicial Circuit District Attorney's office as a remedy for District Attorney Howard's conduct.

Under our State Constitution, "[i]t shall be the duty of the district attorney to represent the state in all criminal cases in the superior court of such district attorney's circuit[.]" Ga. Const. of 1983, Art. VI, Sec. VIII, Para. I(d). "The elected district attorney appoints the assistant district attorneys, OCGA § 15-18-14, the assistant district attorneys serve only at h[er] pleasure, and their authority is derived from [her]. OCGA § 15-18-19(b)." *McLaughlin v. Payne*, 295 Ga. 609, 612–13 (761 SE2d 289) (2014). Accordingly, in a prosecution in Georgia superior courts,

> the whole proceeding, from the time the case is laid before the district attorney until the rendition of the verdict, is under the direction, supervision, and control of that officer, subject to such restriction as the law imposes. Counsel employed to assist in the prosecution of criminal cases can perform no duties as such except those agreeable to and under the direction of the district attorney.

Id. at 613 (punctuation omitted). Thus, the "district attorney has an obligation to ensure that proceedings are conducted in accordance with the rules of evidence and the laws of this state." *McAlister v. State*, 204 Ga. App. 259, 260(1) (419 SE2d 64) (1992), disapproved of on other grounds by *Miller v. State*, 285 Ga. 285, 287 n.1 (676 SE2d 173) (2009). In this capacity, the district attorney has the duty to see that the law is enforced, but this duty is to seek justice and not merely to convict. See *Carr v. State*, 267 Ga. 701, 712(10) (482 SE2d 314) (1997), overruled on other grounds by *Clark v. State*, 271 Ga. 6, 10(5) (515 SE2d 155) (1999).

When an elected district attorney is disqualified from a case, the assistant district attorneys do not have authority to proceed in the case. *McLaughlin*, 295 Ga. at 612–13. This is because an "elected district attorney is not merely any prosecuting attorney. [She] is a constitutional officer, and there is only one such officer in each judicial circuit." Id. at 612, citing Ga. Const. of 1983, Art. VI, Sec. VIII, Para. I(a).

As noted above, we review the trial court's remedy under an abuse of discretion standard, which requires us to sustain the trial court's findings of fact if there is any evidence to support them. *Whitworth v. State*, 275 Ga. App. 790, 791(1) (622 SE2d 21) (2005) (physical precedent only). In applying this standard, we conclude that the trial

court abused its discretion in fashioning a remedy that disqualifies the Macon Judicial Circuit District Attorney's office from Housley's prosecution as a remedy for any conduct by District Attorney Howard. The order is devoid of any evidence demonstrating that District Attorney Howard engaged in *any* conduct worthy of disqualification. The trial court's order makes no findings that District Attorney Howard had any conflict of interest, conducted any forensic misconduct, or conducted herself in any way that gave rise to a significant appearance of impropriety. Indeed, the trial court's order explicitly held that it did not "find that District Attorney Howard engaged in any personal impropriety vis a vis … Housley."

Instead, the trial court's only justification for disqualifying the entire district attorney's office was because it *presumed*—based upon ADA Foster and Investigator McCane's conduct—that District Attorney Howard failed to provide proper training for her staff and violated Rule 5.1. However, the record is devoid of any evidence regarding what training was or was not provided by District Attorney Howard to the assistant district attorneys or the investigators that worked under her.[10]

---

[10] As noted above, Investigator Carswell was not even an employee of the Macon Judicial Circuit District Attorney's office. She was an investigator with the Georgia Attorney General's Office on the date of the confrontation with Housley.

Further, there is nothing in the trial court's order or the underlying record showing that District Attorney Howard was aware of the decision by ADA Foster, Investigator McCane, and Investigator Carswell to confront Housley with the DNA test results, their failure to stop Housley from being questioned without his lawyer present, or that she ratified such conduct after the fact, such that she would be in violation of Rule 5.1 of the Georgia Rules of Professional Conduct.[11] See, e.g., *Kamara v. Henson*, 340 Ga. App. 111 (796 SE2d 496) (2017), disapproved on other grounds by *Fulton County v. Ward-Poang*, 310 Ga. 289, 207(2)(c) (849 SE2d 465) (2020) (affirming trial court's denial of Kamara's motion to disqualify defense counsel because there was no evidence of an actual conflict of interest or actual impropriety); *Whitworth*, 275 Ga. App. at 794(1)(b)(c) (physical precedent only) (trial court did not err by refusing to disqualify assistant district attorney based on an appearance of

---

[11] We question whether the trial court correctly interpreted Rule 5.1 of the Georgia Rules of Professional Conduct. Rule 5.1(b) requires a supervising lawyer to "make reasonable efforts to ensure that the other lawyer conforms to the Georgia Rules of Professional Conduct." However, Rule 5.1(c) provides that a supervising lawyer is responsible for another lawyer's violation of the rules *only* if the supervising lawyer "orders, or with knowledge of the specific conduct, ratifies the conduct" of the supervised lawyer or knew "of the conduct at a time when its consequences [could have been] avoided or mitigated but fail[ed] to take reasonable remedial action." No evidence was presented at the hearing that District Attorney Howard knew of ADA Foster's participation in the meeting with Housley or ratified it.

impropriety when defendant's complaints were "largely based on speculation and conjecture" and there was no actual conflict of interest). Because there is no evidence in the record to support the trial court's conclusion that District Attorney Howard failed to properly train her staff or that she knew about or ratified their conduct, we conclude that the trial court erred in disqualifying the District Attorney's office on this ground.

(b) We next turn to the issue of whether the trial court abused its discretion by concluding that the "taint of the impropriety" created by ADA Foster and Investigator McCane's conduct should "extend to the entire District Attorney's Office." We conclude that it did.

It is true, as noted above, that when an elected district attorney is disqualified from a case, "the assistant district attorneys—whose only power to prosecute a case is derived from the constitutional authority of the district attorney who appointed them—have no authority to proceed." *Roman I*, 373 Ga. App. at 873(1) (punctuation omitted). However, neither the trial court's order nor the State has cited to any Georgia precedent supporting the inverse— i.e., that the disqualification of a district attorney's staff member should disqualify the entire district attorney's office. Indeed,

case law appears to hold the opposite. With regard to disqualification of a district attorney's staff member arising from a conflict of interest, Georgia courts have held that "[v]icarious disqualification of a government department is not necessary or wise, and the individual lawyer should [instead] be screened from any direct or indirect participation in the matter, and discussion with colleagues concerning the case should be prohibited." *Billings v. State*, 212 Ga. App. 125, 129(4) (441 SE2d 262) (1994). This is because disqualification of a district attorney's office is "an extraordinary remedy that should be granted sparingly." *Cohen*, 338 Ga. App. at 166(3) (punctuation omitted).[12] Thus, Georgia case law reflects an unwillingness to disqualify an entire district attorney's office when there is no danger that the actual trial of the case will be tainted.[13] See *Blumenfield v. Borenstein*, 247 Ga. 406, 408 (276 SE2d 607) (1981);

---

[12] Motions to disqualify have been approached with caution in Georgia courts "due to the consequences that could result if the motion is granted, such as the inevitable delay in the proceedings and … the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney. Additionally, we are mindful of counsel using motions to disqualify as a dilatory tactic." *Ga. Trails and Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 213(1) (855 SE2d 103) (2021).

[13] A review of Georgia case law reveals a disinclination to disqualify an entire district attorney's office based upon the disqualification of a member of the district attorney's staff. See *Evans v. State*, 322 Ga. 652, 671–72(3)(b) (921 SE2d 348) (2025) (the conflict of an assistant district attorney is not imputed to the entire district attorney's office because "certain procedures may be employed to screen [the

*Tara Anna, LLC v. Freihofer Transp., Inc.*, 377 Ga. App. 251, 255(1) (922 SE2d 130) (2025) ("Unless an attorney's conduct tends to taint the underlying trial, the court should be quite hesitant to disqualify[.]") (punctuation omitted).

Indeed, Georgia courts have held that even an impropriety requiring reversal of a conviction will not necessarily require the disqualification of the district attorney's office from the second trial. In *Neuman*, 311 Ga. at 90(3), the defendant's convictions were overturned on appeal after prosecutors obtained notes and records from the defendant's psychologists which should have been protected by attorney-client privilege. Id. Our Supreme Court held that the trial court properly denied a defense motion to disqualify the district attorney's office and allowed the same two

disqualified] assistant from the prosecution and it is not necessary that the entire district attorney's office be disqualified from prosecuting the case) (punctuation omitted); *Frazier v. State*, 257 Ga. 690, 693–95(a) (362 SE2d 351) (1987) (rejecting argument that conflicts of an assistant district attorney should be imputed to an entire district attorney's office); *Head v. State*, 253 Ga. App. 757, 757–58(2) (560 SE2d 536)(2002) (conflict of interest that arose when the district attorney's chief investigator entered into an intimate relationship with the victim during the investigation of the case did not disqualify the entire district attorney's office when investigator was ordered to take no part in the investigation or prosecution of the case); *Billings*, 212 Ga. App. at 125, 128(4) (affirming denial of defendant's motion to disqualify the district attorney's office based upon a conflict of interest and an appearance of impropriety arising from the fact that the assistant district attorney at the time of trial had been employed by the public defender's office and represented him during the negotiation of his guilty plea).

assistant district attorneys to retry the case, with strict limitation on the use of the privileged material. Id. at 89-90(3). Similarly, in *Williams*, 258 Ga. at 313–14(2), our Supreme Court determined that although a prosecutor committed forensic misconduct when he made improper statements to members of the media personally commenting on the guilt of the defendant in violation of the professional conduct rules, such misconduct did not require the disqualification of the prosecutor from the case. Id. at 314(2).

We note that we do not condone the actions of ADA Foster, Investigator McCane, or Investigator Carswell. However, because this is not the "rare case in which disqualification [of the entire district attorney's office] is mandated and no other remedy will suffice to restore public confidence in the integrity of these proceedings," *Roman I*, 373 Ga. App. at 873–74, we reverse the trial court's grant of Housley's motion to disqualify to the extent that it disqualifies District Attorney Howard and the entirety of the Macon Judicial Circuit District Attorney's Office from participation in his case.

*Judgment reversed. Rickman, P. J., and Mercier, J., concur.*